UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

WILLIAM JETTE

                Plaintiff,

v.

CAROLYN COLVIN,
Acting Commissioner of Social Security

                Defendant.

No. 3:13-cv-00719-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

Claimant William Jette ("Claimant") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") awarding Claimant Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") for a closed time-period between May 15, 2008, and May 31, 2012 (the "closed period"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following careful review of the record,

FINDINGS AND RECOMMENDATION - 1                                             [RMD]

the court concludes the Commissioner's decision should be reversed and this case should be remanded for additional administrative proceedings.

*Procedural Background*

Claimant filed concurrent applications for SSI and DIB on October 23, 2009, alleging disability beginning May 15, 2008. (Tr. at 161-174.) Claimant requested a hearing and appeared before Administrative Law Judge Richard A. Say ("the ALJ") in December 2011. (Tr. at 12.) Prior to the hearing, Claimant's counsel wrote to the ALJ to propose an amendment to Claimant's application to reflect a "closed period" of disability. (Tr. at 152.) According to that letter, Claimant "found a job that has accommodated him and he returned to full time work effective 6/1/11. It is not that he is no longer impaired by his symptoms; he simply found a position that tolerates the intermittent periods during which he is not functional." (Tr. at 152.) Further, at the December 2011 hearing, Claimant's counsel explained that Claimant's "earnings exceed[ed] substantial gainful activity [levels] . . . ." (Tr. at 38.) However, after the Commissioner's vocational expert ("the VE") testified that Claimant's highly-accommodated position likely did not constitute substantial gainful activity ("SGA"), Claimant withdrew his stipulation to a closed period and requested the ALJ find him disabled beyond May 2011.

On December 23, 2011, the ALJ issued a decision denying Claimant's application for benefits. (Tr. at 76-84.) However, after Claimant filed a motion for reconsideration and supplemented the record with additional medical records from Claimant's doctor, the ALJ partially reversed his decision. (Tr. at 12-13.) On January 27, 2012, the ALJ issued a new decision superceding his original decision and granting Claimant DIB and SSI during the "closed period" between May 2008 and May 2011. (Tr. at 27.) The Appeals Counsel denied Claimant's request for

review, making the ALJ's opinion the Commissioner's final decision. Claimant subsequently filed for review of the decision in this court. (Dkt. No. 1.)

*Factual Background*

Claimant was born in 1970, and was thirty-eight years old at the onset of his alleged disability. He graduated from high school and attended college for one year, but did not earn a degree. (Tr. at 41.) Years ago, Claimant was diagnosed with Chron's disease, a disorder of the digestive tract which causes abdominal pain and diarrhea. (Tr. at 566.) In 1996, doctors removed eight inches of Claimant's intestines in an attempt to alleviate his abdominal symptoms caused by Crohn's disease. (Tr. at 45.) Claimant's bowel symptoms improved significantly and remained dormant for several years but the symptoms returned abruptly in 2005. Medical imaging revealed no physical abnormality in Claimant's internal organs, so doctors diagnosed Claimant with Irritable Bowel Syndrome ("IBS"), a functional digestive disease. (Tr. at 566.) Claimant now experiences abdominal cramping on a daily basis. At times, Claimant's pain wakes him up in the middle of the night. (Tr. at 49.) Claimant rates the pain on a normal day as five-out-of-ten, and occasionally a nine-out-of-ten when he experiences "breakthrough pain." (Tr. at 50.)

Claimant attempted to maintain employment in order to "avoid homelessness," but as his condition deteriorated his digestive symptoms interfered with his work. (Tr. at 47-48.) Often, Claimant would miss work because his painful abdominal cramps. Claimant also began to experience incontinence, which caused him to miss work on a regular basis. Due to the frequency of Claimant's bowel problems, he would often work only one day per week. (Tr. at 48.) When Claimant was able to go to work, he still experienced problems and needed to use the restroom between six and ten times per day. (Tr. at 50.) Despite his attempts to work, Claimant was

terminated from each job he held due to excessive absenteeism. (Tr. at 47-48.)

In 2011, Claimant began living and working at Indigo Ranch, a dog boarding facility in Vernonia, Oregon. There, Claimant is responsible for feeding dogs, doing laundry, and cleaning the grounds. (Tr. at 56.) According to a letter sent to the ALJ by Claimant's supervisor Shannon Todd ("Todd"), Claimant has been doing well at his new job and has been earning money above the level necessary to establish substantial gainful activity. However, Claimant had a rough transition into his new position. During the first few weeks on duty, Claimant broke down crying twice and took many trips to the restroom during the workday. (Tr. at 186-87.) Over time, Claimant's performance improved and his restroom breaks became less frequent. "He was more chipper and eager to take on more responsibilities." (Tr. at 187.) Despite his improved performance, Claimant still misses "at least two days a week" because of his abdominal pain and cramping. (Tr. at 187.) On those occasions, Claimant stays in his bedroom or the restroom until his pain subsides. Fortunately for Claimant, his employer has accommodated, and "will continue to accommodate" his health issues. (Tr. at 187.)

I. The ALJ's Decision

The ALJ engaged in the five-step "sequential evaluation" process for evaluating SSI claims. 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four, but the burden of production shifts to the Commissioner at step five to identify jobs existing in significant numbers in the national economy that the claimant can perform despite his or her residual functional capacity, age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). Because the ALJ found the Claimant disabled during the "closed period of disability," the ALJ next engaged in the eight-step

continuing-disability evaluation process. 20 C.F.R. §§ 404.1594, 416.994.

*A. Initial Five-Step Process*

At step one, the ALJ determined Claimant met the "insured status requirements under the Social Security Act through December 31, 2013" and had not engaged in SGA between May 15, 2008, his alleged onset date, and May 31, 2011. (Tr. at 16.) Although Claimant collected some unemployment insurance benefits during this period, he had no reported earnings. (Tr. at 16.)

At step two, the ALJ determined Claimant "had severe impairments related to Crohn's disease, status-post resection of the ileocecal valve with chronic diarrhea and anxiety." (Tr. at 16.) The ALJ discussed Claimant's medical records, and noted that although Claimant's digestive organs are physically normal, he suffers from a functional bowel disorder whereby his digestive organs do not function properly. From Claimant's medical records, the ALJ concluded Claimant's IBS was a "severe impairment" during the closed period. (Tr. at 17.)

At step three, the ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404. Specifically, the ALJ found that Claimant's anxiety, depression, and bowel disruption failed to meet the paragraphs A, B, and C criteria.

Next, the ALJ articulated the limits of Claimant's Residual Functional Capacity ("RFC"). An RFC is an individual's "ability to do physical and mental work activities on a sustained basis despite limitations from his [or her] impairments." (Tr. at 14, 19.) The ALJ held that during the "closed period" between May 2008 and June 2011 Claimant had the RFC to perform light work. (Tr. at 19.) However, Claimant had exertional and non-exertional limitations on his light work capability. Notably, the ALJ determined Claimant: (1) could only frequently climb ramps and stairs,

balance, and kneel; (2) could occasionally climb ladders, ropes and scaffolds; (3) could occasionally stoop, crouch, and crawl; (4) was limited to unskilled work and routine tasks; (5) could engage in only superficial interaction with coworkers and the general public; and (6) required frequent bathroom breaks during the work-day which would interrupt his schedule. (Tr. at 19.)

At step four, the ALJ concluded Claimant was unable to perform any of his past relevant work between May 15, 2008, and June 1, 2011. (Tr. at 22.) Claimant was unable to work as an inpatient intake clerk or customer service representative because those positions required semi-skilled employees. He was unable to work as an animal caretaker because it required medium exertion; and he could not return to a position as an Advertising Production Manager because that position required extensive interaction with prospective clients and co-workers. Therefore, Claimant's past relevant work required either "greater exertion or greater skill than allowed" by Claimant's RFC.

At step five, the ALJ concluded that, given Claimant's limitations, he could perform no jobs in that existed in significant numbers in the national economy. The ALJ held that, although Claimant had the exertional capacity to perform a range of light work, Claimant's non-exertional limitations restricted his ability to perform positions which existed in sufficient numbers in the market. Thus, the ALJ held that Claimant was disabled and entitled to benefits during the closed period.

*B. Continuing Disability Evaluation*

Because the ALJ concluded Claimant was disabled during the closed period, he next considered whether Claimant's disability continued thereafter. First, the ALJ considered whether Claimant was performing SGA. The ALJ's opinion does not make clear his analysis on step one of

the continuing-disability evaluation, but the ALJ concluded at the beginning of his opinion that Claimant's work at the Indigo Ranch constituted SGA. The ALJ did not analyze whether Claimant's work constituted a trial work period or unsuccessful work attempt.

Second, the ALJ evaluated whether Claimant experienced any medical improvement after the closed period. The ALJ determined that there was no medical evidence of a disability after the closed period, and held that Claimant "demonstrated greater functioning since June 1, 2011." (Tr. at 23.) The ALJ noted Claimant had a great deal of difficulty at the beginning of his tenure at the Indigo Ranch, but eventually became "eager to take on more responsibilities." (Tr. at 24.) Claimant's condition continued to improve, and was able to engage in more strenuous work, including chopping firewood. (Tr. at 24.) According to the ALJ, this and other evidence showed that Claimant demonstrated "improved functioning both physically and mentally." (Tr. at 24.)

The ALJ made several credibility determinations during step three. First, he found the last portion of Todd's letter incredible. In her letter, Todd mentioned that Claimant still misses around two days of work per week due to his symptoms. The ALJ determined that this statement was not credible because the ALJ believed Todd's statement was motivated by secondary gain. Further, the ALJ found Todd's statement inconsistent with the fact that Claimant had not sought significant medical treatment after the end of the closed period. Second, the ALJ discounted the credibility of Claimant's physician, Dr. Gillingham. According to the ALJ, Dr. Gillingham's objective medical reports did not "reflect sustained symptoms." (Tr. at 24.) After the closed period, his records did "not corroborate a continuation of severe symptomology and limitations noted from the closed period."

The ALJ also assessed Claimant's credibility. The ALJ determined that Claimant's

complaints of dangerous weight loss were unfounded. (Tr. at 25.) The ALJ noted that claimant lost sixteen pounds over several months at an average below three pounds per month. The ALJ disagreed with Claimant that it was a significant amount of weight to lose, as three pounds per month is "what a healthy dieter aspires to achieve." (Tr. at 25.) Finally, the ALJ took issue with Claimant's contention that he can consume only protein drinks. Without explanation or citation to evidence, the ALJ opined that it is "equally likely that [Claimant] only consumes protein drinks to purposely loose [sic] weight and further strengthen his alleged irritable bowel syndrome and abdominal pain complaints." (Tr. at 25.)

Next, the ALJ determined that Claimant's medical improvement was related to his ability to work because his diminished symptoms allowed a more continuous and productive workday. (Tr. at 25.) Further, the ALJ determined that "[C]laimant's functional capacity for basic work activities has been increased." (Tr. at 25.) Notably, the ALJ determined that under his new RFC, Claimant had the capacity to perform medium work. According to the ALJ, the only limitation Claimant required was that his work be unskilled. The ALJ found the following:

> The overall record clearly reflects significantly increased functioning with no need to seek medical care until just before his hearing. The claimant has been working independently at greater levels, both mentally and physically, since July 2011. . . . Accordingly, the undersigned finds the claimant is not entirely credible since June 1, 2011, through the date of this decision, trying to mask and minimize his improved condition and functioning.

(Tr. at 25-26.)

Because Claimant experienced medical improvement and was engaged in substantial gainful activity, the ALJ determined that, "[b]eginning June 1, 2011, the claimant has been capable of performing his current work as animal caretaker. This work does not require the performance of work-related activities precluded by the claimant's current [RFC]." (Tr. at 26.) The ALJ found

FINDINGS AND RECOMMENDATION - 8                                                                                    [RMD]

particularly convincing the fact that Claimant's "work hours . . . span beyond a normal workday to 10 or 12 hours a day." (Tr. at 26.) Further, Claimant has been in a better mood, has decreased the frequency of his restroom breaks and has been volunteering for additional work. On that basis, the ALJ concluded Claimant was no longer disabled after June 1, 2011, and was not entitled to SSI or DIB benefits after that date.

*Discussion*

Claimant appeals the decision of the ALJ and claims the ALJ: (1) erred in finding Claimant's work at the Indigo Ranch constituted SGA; (2) did not fully develop the case; (3) provided an inaccurate and inadequate RFC; and (4) erred in making his credibility determinations. However, in his opening brief, claimant provides argument only in support of his first assignment of error. His remaining assignments of error appear only as subheadings in his brief without accompanying argument.

I. Failing to Consider Claimant's Eligibility for a Trial Work Period

Claimant argues that the ALJ erred in improperly analyzing whether Claimant had a "continuing disability" after the closed period. Specifically, Claimant contends the ALJ failed to evaluate whether Claimant's work at the Indigo Ranch constituted a "trial work period" as required by federal regulations. The Commissioner argues that the ALJ committed no error. However, the Commissioner argues, even if the ALJ committed error, the Claimant waived his opportunity to challenge that error in this court.

At step one in the continuing disability evaluation process, the ALJ is required to determine whether the Claimant engaged substantial gainful activity during any relevant time-period. 20 C.F.R. § 404.1594(f)(1). Substantial gainful activity is "work activity that involves doing significant

physical or mental activities," and "is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(a)-(b). If a claimant is engaged in substantial gainful activity, the Commissioner will find the claimant's disability to have ended. *Id.*

Before an ALJ deems a claimant not disabled due to his or her performance of SGA, the ALJ must evaluate whether the claimant's employment constitutes a "trial work period." *Id.* "A trial work period is a period during which [a claimant] may test [his or her] ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). A claimant's eligibility for a trial work period begins "with the month in which [the claimant] become[s] entitled to" benefits, and lasts until the earliest of "[t]he 9th month (whether or not the months have been consecutive . . . ) in which [the claimant has] performed services within a period of 60 consecutive months" or until "[t]he month in which new evidence, other than evidence relating to any work [the claimant] did during the trial work period, shows that [he or she is] not disabled . . . ." *Id.*

In *Tumminaro v. Astrue*, the Seventh Circuit faced similar facts as those now before this court. 671 F.3d 629, 631 (7th Cir. 2011). There, the claimant filed for disability benefits, claiming eligibility due to severe back pain. *Id.* Despite her pain, the claimant returned to work before the Commissioner ruled on her disability application because "she needed the money." *Id.* at 632. After a hearing, an ALJ "concluded that [the claimant's] chronic back pain had rendered her disabled from January 2004 until she returned to full-time work in February 2008." *Id.* The ALJ determined that, because the claimant returned to full-time work, she experienced medical improvement and was no longer disabled. *Id.* The ALJ did not cite any medical evidence or other evidence in coming to this conclusion. *Id.* The district court affirmed the ALJ's decision, and the claimant appealed to the Seventh Circuit. *Id.* The Seventh Circuit reversed the Commissioner's decision and reasoned that

"[w]ork performed after a claimant becomes entitled to benefits will be characterized as part of a trial period until such time as the claimant has tallied 9 months of 'service.'" *Id.* at 633. The court also reiterated § 404.1592's requirement that an ALJ rely on medical and other evidence, as opposed evidence of "the work being performed," to conclude a claimant is no longer disabled. The court ultimately concluded that the claimant "should have been allowed nine months of 'service' without jeopardizing her entitlement to benefits." *Id.* at 634.

The facts here are very similar to those in *Tumminaro*. First, in both cases the claimant began working at or close to full-time before the ALJ ruled on the claimant's application for benefits. Second, the ALJ in both cases found that the claimant's full-time work constituted SGA without evaluating whether claimant was entitled to, and engaging in, a trial work period. Third, like here, the ALJ in *Tumminaro* used evidence relating to the claimant's work to find medical improvement. Although *Tumminaro* is not mandatory authority in this district, the court finds it persuasive, as it involves similar facts and is fully consistent with relevant statutes and regulations.

The Commissioner argues that the ALJ committed no error because he implicitly found Claimant ineligible for a trial work period due to medical improvement. The record here does not support that conclusion. The only evidence the ALJ cited to show the claimant experienced medical improvement was from Todd's letter describing Claimant's on-the-job improvement during his tenure at Indigo Ranch. Relevant regulations provide that to find medical improvement, the ALJ must rely on "medical or other evidence" and not "evidence relating to any work [the claimant] did during the trial work period." Therefore, the ALJ erred as a matter of law in failing to examine whether Claimant's first nine months of employment at the Indigo Ranch constituted a trial work period.

The Commissioner contends that even if this was error, Claimant waived this argument because she failed to raise it with the ALJ. In support for this argument, the Commissioner cites *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) and *Mills v. Apfel*, 244 F.3d 1 (1st Cir. 2001). However, in both of these cases, the respective courts held that a claimant could not introduce new evidence to the District Court that he or she did not provide to the ALJ. New evidence is not at issue in this case. Here, the claimant could not have anticipated that the ALJ would commit legal error by failing to adhere to the eight-step process required of continuing-disability evaluations. To the extent the Commissioner argues that Claimant's waiver arose because he stipulated at the administrative hearing to a closed period of disability, the court disagrees. The ALJ recognized that Claimant contested the issue after the hearing concluded. He wrote, "[t]he day after the hearing, the claimant's attorney submitted a letter withdrawing the closed period request, citing the vocational expert's testimony at hearing that the current job 'could not be considered substantial gainful activity due to the existence of the accommodations necessary to permit Mr. Jette to do it.'" (Tr. at 12.) Failing to argue in Claimant's post-hearing correspondence to the ALJ that Claimant's work at the Indigo Ranch was a trial work period did not waive his argument, because he could not have anticipated the ALJ would skip a necessary step to the continuing-disability analysis.

II. Claimant's Other Arguments

In his opening brief, the claimant lists five more assignments of error, but fails to present argument in support of his claims. He later asserts more detailed arguments on each of these issues in his reply. In *Greenwood v. F.A.A.*, the Ninth Circuit held that for a party represented by counsel appealing the decision of a lower court:

> We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare

FINDINGS AND RECOMMENDATION - 12                                                          [RMD]

assertion does not preserve a claim, particularly when . . . a host of other issues are presented for review. As the Seventh Circuit in [*United States v.*] *Dunkel* stated aptly: "[j]udges are not like pigs, hunting for truffles buried in briefs."

28 F.3d 971, 977 (9th Cir. 1994). Because Claimant does not argue his remaining claims of error with specificity, the court will not consider his other arguments and will deem them waived.

III. Directions on Remand

The ALJ committed reversible error during the continuing disability analysis. When the ALJ commits reversible error, the court has "discretion to remand a case either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Where the record is fully developed and "further administrative proceedings would serve no useful purpose," the court will generally direct an award for benefits. *Id.* The Ninth Circuit has held that additional administrative proceedings are futile where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.*

Here, the record is not fully developed and further administrative proceedings are needed to resolve the issues remaining in this case. Currently, the record does not contain enough evidence to determine whether Claimant is entitled to a trial work period, whether the work at the Indigo Ranch constituted a trial work period, and whether Claimant remained disabled after a potential trial work period concluded. Therefore, the court should remand this case back to the ALJ for additional administrative proceedings and resolve these issues.

## *Conclusion*

For the reasons discussed herein, and pursuant to Claimant's Complaint to Review Final

Decision fo the Commissioner (Dkt. No. 1), the court should REVERSE the decision of the ALJ and REMAND this case for additional administrative proceedings consistent with the court's opinion.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due September 22, 2014. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 8th day of September, 2014.

_____
JOHN V. ACOSTA
United States Magistrate Judge